Elisabeth Holmes (OR Bar # 120254)
Willamette Riverkeeper
P.O. Box 293
Eugene, Oregon 97440
Tel. (541) 870-7722
No facsimile
Email: eli@willametteriverkeeper.org

Daniel C. Snyder (OR Bar # 105127)
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence Street
Eugene, Oregon 97401
Tel. (541) 344-3505
Fax (541) 344-3516
Email: dan@tebbuttlaw.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF OREGON
### EUGENE DIVISION

| | |
|---|---|
| WILLAMETTE RIVERKEEPER, an Oregon non-profit corporation,<br><br>　　　Plaintiff<br><br>vs.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS, an agency of the United States of America,<br><br>　　　Defendant. | Case No.: 6:20-cv-2189-__<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>(Freedom of Information Act, 5 U.S.C. § 552 *et seq.*, Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*) |

## STATEMENT OF THE CASE

1.　　This is a civil action by Willamette Riverkeeper ("Willamette Riverkeeper" or

"Plaintiff") for declaratory and injunctive relief arising from Defendant UNITED

STATES ARMY CORPS OF ENGINEERS' ("Defendant" or "the Corps") unlawful

violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, and the

United States Army Corps of Engineers regulations promulgated thereunder, 32 C.F.R. § Part 518 (reserved), and United States Department of Defense FOIA Program regulations, 32 C.F.R. § Part 286. The violations identified herein also constitute agency action unlawfully withheld or unreasonably delayed and/or are arbitrary, capricious, or otherwise not in accordance with law under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*

2.  This action challenges the unlawful failure of the above-named Defendant to abide by the statutory requirements of the FOIA, and applicable regulatory requirements, and further alleges the actions and omissions underlying such claims under the APA.

3.  Prompt access to the requested information is crucial to Willamette Riverkeeper's work safeguarding the Willamette River Basin waters, ecosystems, public use of the river, and the safety, lives, and property of approximately 2.5 million Oregonians who reside and recreate in the Willamette River Valley. Plaintiff's March 25, 2020 FOIA request sought records relating to the construction, oversight, assessment, maintenance, and management of the safety and integrity of the Defendant's thirteen (13) dams in the Willamette Valley Project (hereinafter "Willamette Valley Project dams" or "the dams"), listed below.

| No. | Willamette Valley Project Dam Name and Location (including county) |
|-----|---------------------------------------------------------------------|
| 1   | Fall Creek Dam on Fall Creek (Lane County)                          |
| 2   | Fern Ridge Dam on the Long Tom River (Lane County)                  |
| 3   | Cottage Grove Dam on the Coast Fork Willamette River (Lane County)  |
| 4   | Dorena Dam on the Row River (Lane County)                           |
| 5   | Big Cliff Dam on the North Fork Santiam River (Marion and Linn Counties) |
| 6   | Detroit Dam on the North Fork Santiam River (Marion and Linn Counties) |

COMPLAINT                                    2

| 7  | Green Peter Dam on the Middle Santiam River (Linn County) |
| 8  | Foster Dam on the South Fork Santiam River (Linn County) |
| 9  | Blue River Dam on the Blue River (Lane County) |
| 10 | Cougar Dam on the McKenzie River (Lane County) |
| 11 | Dexter Dam on the Middle Fork Willamette River (Lane County) |
| 12 | Hills Creek Dam on the Middle Fork Willamette River (Lane County) |
| 13 | Lookout Point Dams on the Middle Fork Willamette River (Lane County) |

Willamette Riverkeeper sought records from January 1, 2009 to the present, and requested a fee waiver. A true and accurate copy of Willamette Riverkeeper's FOIA request is attached hereto as Attachment 1.

4.      Each of the thirteen dams in the Willamette Valley Project differ in their functions and the degree of functionality. Very generally, these functions may include flood risk management, water storage (which also provides recreation opportunities), water releases for irrigation, fish population and habitat management, and hydroelectricity generation.

5.      In 2019, this complex system of Willamette Valley Project dams turned 50 years old.

6.      On February 21, 2020, the Corps released a Draft Environmental Assessment for Hills Creek and Lookout Point Dams, in which it identified these two dams as having "moderate to and high" life-safety risks, respectively, from seismic events. A true and accurate copy of the Draft EA is attached hereto as Attachment 2.

7.      Willamette Riverkeeper seeks records relating to the thirteen Willamette Valley Project dams' safety and integrity in light of the dams' construction methods and materials, respective ages, stress from use, the threat of seismic events in the Willamette River Basin, extreme weather events, and climate change.

COMPLAINT                               3

8.      There exists threats to Willamette Valley Project dams from seismic events in the Cascadian Subduction Zone that the U.S. Geological Survey and Oregon Department of Geology and Mineral Industries have recently studied.

9.      There exists other threats to Willamette Valley Project dams from extreme weather events and climate change.

10.     Between 2000 and 2009, more than 200 notable dam failures happened worldwide.

11.     Since 2000, approximately 14 dam failures have happened in the United States alone.

12.     The dam failure in Oroville, California (2017) may have been related to dam age, design flaws, and maintenance shortfalls; the dam failure in Brumadinho, Brasil (2019) may been related to liquefaction, seismic activity, or heavy rainfall; and the Laos Dam collapse (2018) may have been related to the dam's inability to cope with unpredictable and extreme weather events which are becoming more frequent. *See* Attachment 1 at 6.

13.     Defendant has unlawfully withheld and continues to unlawfully withhold from public disclosure the information sought by Willamette Riverkeeper. Willamette Riverkeeper is entitled to receive the requested information. No valid disclosure exemption applies that would prohibit disclosure of the requested documents or has been asserted.

14.     Defendant has failed to comply with the statutory mandates and deadlines imposed by the FOIA. In the alternative, Defendant's acts and omissions constitute agency action unlawfully withheld or unreasonably delayed and/or which are arbitrary, capricious, or otherwise not in accordance with the law under the APA, and are therefore actionable thereunder.

15.     Defendant has not made a timely determination on whether to comply with Willamette Riverkeeper's FOIA request.

COMPLAINT                                   4

16. The records requested are likely to contribute significantly to the understanding of operations or activities of the government and are not primarily in the commercial interest of the requester.

17. Accordingly, Willamette Riverkeeper seeks declaratory relief establishing Defendant has violated FOIA and that Plaintiff is entitled to relief thereunder and under the APA.

18. Willamette Riverkeeper also seeks injunctive relief directing Defendant to promptly conduct a reasonably adequate search for records, to promptly provide Willamette Riverkeeper with responsive material, to reasonably segregate portions of non-exempt records, and to provide legally adequate justifications for any exemptions claimed.

19. Willamette Riverkeeper also seeks an award of its reasonable attorneys' fees, costs, and other expenses incurred in bringing this action. 5 U.S.C. § 552(a)(4)(E).

## JURISDICTION AND VENUE

20. Jurisdiction is proper in this Court pursuant to 5 U.S.C. § 552(a)(4)(B) of the FOIA which grants jurisdiction to "the district court of the United States in the district in which the complainant resides, or has his principal place of business[.]"

21. Plaintiff Willamette Riverkeeper both resides and maintains principal places of business in the District of Oregon. Willamette Riverkeeper maintains two offices in Oregon, located at 403 Southeast Caruthers Street, # 101, Portland, Oregon 97214, and at 454 Willamette Street, Eugene, Oregon 97401.

22. Defendant's office for the U.S. Army Corps of Engineers Northwestern Division (Portland District) is located at 333 Southwest 1st Avenue, Portland, Oregon 97204.

COMPLAINT                                        5

23.   The Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises pursuant to FOIA, the APA, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

24.   The challenged agency action is final and subject to judicial review pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

25.   The requested declaratory and injunctive relief is authorized and appropriate pursuant to by 28 U.S.C. §§ 2201, 2202 and 5 U.S.C. § 552(a)(4)(B).

26.   This action reflects an actual, present, and justiciable controversy between the Plaintiff and the Defendant. Plaintiff's interests will be adversely affected and irreparably injured if Defendant continues to violate FOIA as alleged herein.

27.   The requested relief would redress the actual, concrete injuries to Plaintiff caused by the Defendant's failures to comply with duties mandated by FOIA and its associated regulations.

28.   Defendant has not made a determination on whether to comply with Plaintiff's FOIA request, has not responded to Plaintiff's FOIA request with any responsive documents, or responded in a timely manner to Plaintiff's request for status reports. Plaintiff has therefore constructively exhausted its remedies under the FOIA. 5 U.S.C. § 552(a)(6)(A), (C).

29.   Venue properly vests in this Court pursuant to 5 U.S.C § 552(a)(4)(B), which provides venue for FOIA cases in the district in which the plaintiff resides or has its principal place of business or in the district in which the agency records are situated.

30.   The requested documents are primarily located within the judicial district of Oregon.

31.    A substantial part of the events or omissions giving rise to this legal claim occurred in Lane County, Linn County, and Marion County, Oregon thus assignment to the Eugene Division is proper pursuant to LR 3-2(a)(3).

## PARTIES

32.    Plaintiff Willamette Riverkeeper is a 501(c)(3) and an Oregon non-profit corporation headquartered on the Willamette River in Portland, Oregon. Willamette Riverkeeper serves as the eyes, ears, and voice of the 187-mile long Willamette River, and the Willamette River Basin waters, creeks, and tributaries. For more than 20 years, the organization's sole mission has been to protect and restore the Willamette River's water quality, habitats for wildlife and aquatic species, and resources. Willamette Riverkeeper believes that a river with good water quality and abundant natural habitat, safe for fishing and swimming, is a basic public right.

33.    Willamette Riverkeeper has a strong interest in public records related to the federal government's activities and operations related to the human life or property safety of thirteen Willamette Valley Project dams which are under the Defendant's operation, maintenance, and control. Willamette Riverkeeper submitted a FOIA request on March 25, 2020 seeking public records relating to the construction, oversight, assessment, maintenance, and management of the dams' safety, risks, adequacy, integrity or stability. Willamette Riverkeeper also requested a fee waiver.

34.    Willamette Riverkeeper engages in public outreach and education, advocacy with agencies, agency administrative processes, habitat restoration, Superfund cleanup, Clean Water Act compliance, and where necessary, litigation. Willamette Riverkeeper brings

this action on behalf of itself and its affected staff, and its nearly 7,000 members and supporters.

35.    Willamette Riverkeeper brings this action on its own behalf and on behalf of its adversely affected members. Willamette Riverkeeper and its members are injured and adversely affected by Defendant's failure to make a determination on its FOIA request. Willamette Riverkeeper and its members are injured and adversely affected by Defendants' failure to release the requested documents.

36.    The relief sought by Willamette Riverkeeper would redress the injuries suffered by Willamette Riverkeeper and its members, as well as provide valuable and necessary information that will allow Willamette Riverkeeper, its members, and the general public, to engage with Defendant on a fully-informed basis. The requested relief would require Defendant to make a determination on and respond to Willamette Riverkeeper's FOIA request. The requested relief would require Defendants to promptly release the requested documents and information.

37.    Defendant United States Army Corps of Engineers is an administrative component of the United States Department of Defense. The United States Army Corps of Engineers is an agency of the executive branch of the United States government.

38.    The United States Army Corps of Engineers has responsibility for the actions challenged in this complaint and is in possession or control of the public records requested and sought by Willamette Riverkeeper.

39.    Defendant is an "agency" under the FOIA and subject to the FOIA. 5 U.S.C. § 552(f).

40.    Defendant is responsible for promptly responding to all FOIA requests, including the underlying request at issue here for records that are "records" under the FOIA, and within

Defendant's possession or control. Id. In this capacity, Defendants are responsible for implementing and complying with federal laws and regulations, including those implicated by this action.

41.     Defendant has failed to make a timely or complete determination on Plaintiff's FOIA request.

42.     Defendant has not produced any records responsive to the request.

## FACTUAL BACKGROUND

43.     The U.S. Army Corps of Engineers is a basic branch of the United States Army. 10 U.S.C. § 7063(a)(4).

44.     Defendant U.S Army Corps of Engineers delivers engineering, construction, and civil works services for the public and the military.

45.     Since at least 1936, Congress authorized Defendant's construction, operation, and maintenance of dams, including the thirteen dams in the Willamette Valley Project, through a series of Flood Control Acts. *See* 33 U.S.C. § 701 *et seq.*

46.     Congress has authorized Defendant's civil works activities to encompass navigation, flood and storm damage protection, and aquatic ecosystem restoration. *See, e.g.,* 33 U.S.C. § 1344 (Clean Water Act § 404); 33 U.S.C. § 401, 403 (Rivers and Harbors Act of 1899 §§ 9 and 10); 33 U.S.C. § 1401 *et seq.* (Marine Protection Research and Sanctuaries Act of 1972 § 103).

47.     The Defendant strives to strengthen our Nation's security, energize the economy, and reduce risks from disasters. For the 2018-2022 timeframe, the U.S. Army Corps of Engineers has four goals: to support national security; to deliver integrated water resource solutions; to reduce disaster risks; and to prepare for tomorrow. *See* U.S. Army Corps of

Engineers "Campaign Plan FY 18-22" available at

https://www.usace.army.mil/Portals/2/docs/FY18_22_UCP_Horseblanket.pdf.

48.    Defendant U.S. Army Corps of Engineers (Northwest Division) Portland District operates

thirteen dams in the Willamette Valley Project.

49.    Through these thirteen Willamette Valley Project dams, the Corps controls the volume

and timing of water flowing in the Willamette River Basin, reducing peak flows,

increasing low flows and limiting natural flooding events, thereby reducing or

eliminating critically important stream, riparian and floodplain habitats.

50.    The Corps is responsible for the construction, oversight, maintenance, and management

of the Willamette Valley Project dams' safety. *See, e.g.*, 33 C.F.R. § 222.6, Appendix D.

51.    On or about February 21, 2020, Defendant U.S. Army Corps of Engineers Portland

District issued a Draft Environmental Assessment ("Draft EA") for Willamette Basin

Dams Reservoir Restrictions for Lookout Point and Hills Creek Dams. The Draft EA

stated that the Corps "is conducting advanced risk assessments called Issue Evaluation

Studies (IES) at several [Willamette Valley Project] dams including Hills Creek (HCR)

and Lookout Point (LOP) dams. The risk assessments evaluate the life safety risks

associated with the dams to determine if risk reduction actions are needed and if so, what

actions should be taken. Results of these studies for the two dams identified the life-

safety risk to moderate to high, respectively. The risk for both projects is driven by the

potential for extreme seismic (earthquake) loadings that might occur at the same time

summer conservation pool elevations are the highest. Despite the unlikely nature of these

loading conditions, there is potential for large life-safety consequences associated with

dam failure, therefore immediate action is warranted to reduce risk to tolerable levels."
Attachment 2 at 3.

52.     Despite the complex technical and scientific issues raised by the Draft EA, and the
limited records posted on the Corps' website, the Draft EA was only subject to a fifteen
day public review period. Id. at 4.

53.     Willamette Riverkeeper submitted comments to the Corps on March 9, 2020.

54.     On March 25, 2020, Willamette Riverkeeper submitted a FOIA request to the Corps of
Engineers (Northwestern Division) Freedom of Information Officer via email.

55.     The March 25, 2020 FOIA request sought the following six categories of records relating
to the Defendant's construction, oversight, assessment, maintenance, and management of
the safety, risks, adequacy, integrity or stability the 13 Willamette Valley Project dams in
Oregon, including the two dams that were the subject of the Draft EA. Willamette
Riverkeeper requested: (i) Emergency action or emergency safety plans or exemption
letters; (ii) Inspection or investigation records; (iii) Reports or studies or assessments or
investigations (including any independent consultant reports, operation or maintenance
reports, construction reports, public correspondence reports or complaints relating to
safety, risk, structural or operational adequacy, integrity or stability); (iv) Monitoring
information or data; (v) analyses or recommendations or dissenting views relating to dam
safety, risks, structural or operational adequacy, integrity or stability; and (vi)
Communications or correspondence relating to dam safety, risk, adequacy, integrity or
stability. Attachment 1 at 2.

56.     Willamette Riverkeeper's FOIA request sought a fee waiver. Id. at 4-7.

57.    On April 8, 2020, via email, Defendant acknowledged receipt of Willamette

Riverkeeper's FOIA request and assigned the request tracking number 20-16273. A true

and accurate copy of this email is attached hereto as Attachment 3.

58.    In its April 8, 2020 acknowledgment, Defendant generally stated therein that they

"endeavor to provide incremental releases." Id.

59.    The Defendant further stated that "In accordance with 5 U.S.C. § 552(a)(6)(B)(ii), this

office is also extending the time to respond beyond 20 working days due to the extensive

coordination among various Corps components necessary to respond to your request." Id.

60.    On April 15, 2020, Defendant requested a telephone conference with Willamette

Riverkeeper. On April 17, 2020 Willamette Riverkeeper's Staff Attorney attended a

telephone call with Corps FOIA, technical, and legal staff to discuss the FOIA request.

During that call, the Corps outlined the nature of records it maintains and Willamette

Riverkeeper represented that it had reviewed agency regulations prior to submitting the

FOIA request in order to request records the agency is required to maintain.

61.    On April 21, 2020, Willamette Riverkeeper sent a follow-up email to the Defendant,

agreeing to prioritize certain records in order to facilitate the Defendant's search, review,

and release of the requested records, and that Willamette Riverkeeper was doing so

without foregoing its right to seek any and all records covered by the FOIA request. A

true and accurate copy of this email is attached hereto as Attachment 4 at 6-7.

62.    Willamette Riverkeeper wrote in its April 21, 2020 email that "we have listed records

that we believe are readily available for the Corps to retrieve and to release" and that

"[a]s we receive and review the records, we may be able to further prioritize the request,

for example, by prioritizing certain dams, or if we are able to identify records that are or

are not of most interest to the organization based on the kinds of records received for Hills Creek and Lookout Point. Similarly, regarding the communications category, we may be able to further hone that request once we review the initial releases of information." Id. at 7.

63.    In particular, Willamette Riverkeeper's April 21, 2020 email identified the following ten categories of "prioritized" records: (i) Emergency action plans for Hills Creek and Lookout Point Dams; (ii) Records supporting the Hills Creek and Lookout Point Dams Draft Environmental Assessment (issued Jan. 2019); (iii) Inspection reports (annual and periodic) for Hills Creek and Lookout Point Dams; (iv) Hills Creek and Lookout Point Dams' Risk Assessments, Consequence Studies, Issue Evaluation Studies and Dam Safety Modification Studies; (v) Emergency action plans for the 11 other dams identified in the Request; (vi) Inspection reports (annual and periodic) for the 11 other dams; (vii) Risk Assessments, Consequence Studies, Issue Evaluation Studies and Dam Safety Modification Studies for the 11 other dams; (viii) Operation and maintenance and upgrade records for all 13 dams; (ix) Communications; and (x) Other records covered by the request. Id. at 6-7.

64.    On April 22, 2020, twenty days excepting Saturdays, Sundays, and legal public holidays had passed since Willamette Riverkeeper submitted its FOIA request.

65.    On May 6, 2020, ten additional working days had passed.

66.    On May 19, 2020, forty days after Willamette Riverkeeper submitted its FOIA request, Defendant emailed Willamette Riverkeeper. A true and accurate copy of this email is attached hereto as Attachment 4 at 5-6.

COMPLAINT                    13

67.  Defendant stated in their May 19, 2020 email that they anticipated the need to coordinate

with multiple offices throughout various geographic locations to search for, collect, and

examine voluminous documents, many of which were sensitive in nature. Id. at 5.

68.  Defendant also stated in their May 19, 2020 email that they were invoking 5 U.S.C. §

552(a)(6)(B)(ii) "unusual circumstances" exception to extend the FOIA response time

limits, but that Defendant was "reluctant to provide a specific response date at this time."

Id. at 5.

69.  On May 19, 2020, Defendant granted Willamette Riverkeeper's request for a fee waiver.

Id. at 5.

70.  On May 20, 2020 Willamette Riverkeeper responded to the Defendant via email,

notifying Defendant that they had improperly invoked the "unusual circumstances"

exception by failure to provide a date on which a determination is expected to be

dispatched. Willamette Riverkeeper also asked the Defendant to "commit to a schedule

for rolling / incremental releases" of the prioritized records. A true and accurate copy of

this email is attached hereto as Attachment 4 at 5.

71.  On June 11, 2020, the Corps responded to Willamette Riverkeeper, stating that it was

"diligently pursuing" the request. The Corps also decided, unilaterally, to further

prioritize items (i) through (iv) of the ten items Willamette Riverkeeper had prioritized on

April 21, 2020. The Corps stated that items (i) through (iv) had turned up "a staggering

amount of documents, totaling over thirty gigabytes worth of data" just for Lookout Point

and Hills Creek Dams, and that some records are generated through collaboration with

other Corps offices. Additionally, the Corps generally stated that "some of the requested

COMPLAINT                                    14

documents detail security concerns of critical infrastructure." A true and accurate copy of this email is attached hereto as Attachment 4 at 4.

72. The Corps further stated in its June 11, 2020 email that "we respect your decision" not to further narrow the request, but encouraged Willamette Riverkeeper "to consider reducing the size of your request or providing more specificity…" Id. at 4.

73. On July 28, 2020, Willamette Riverkeeper informed the Corps that it could potentially further prioritize the records, but it required more information from the Corps about the records and the potential for critical infrastructure claims of exemption / confidentiality in order to do so. Willamette Riverkeeper re-iterated that it had designed the FOIA request based on the Corps' own regulatory reporting and tracking requirements. Willamette Riverkeeper suggested an email or telephone call with the Corps to further discuss the FOIA request. A true and accurate copy of this email is attached hereto as Attachment 4 at 3.

74. On August 19, 2020, Willamette Riverkeeper had not received a response to its July 28, 2020 email, and emailed the Corps again and suggested scheduling a time to discuss the FOIA. A true and accurate copy of this email is attached hereto as Attachment 4 at 3.

75. On September 3, 2020, Willamette Riverkeeper had not received a response to its July 28, 2020 or August 19, 2020 emails. Willamette Riverkeeper emailed the Corps again, asking the Corps to further discuss the FOIA request, whether Willamette Riverkeeper should engage with the Corps' FOIA Liaison, and for the Corps to share its plan for responding to and releasing responsive records. A true and accurate copy of this email is attached hereto as Attachment 4 at 2.

76.    On September 3, 2020, the Corps responded that an initial search had turned up numerous records and it was continuing to review documents; that Emergency Action Plans, Annual Inspection Reports, and Periodic Inspection Reports; and associated drafts contain Department of Defense Critical Infrastructure Security Information (CISI) that would reveal vulnerabilities. The Corps stated it believed "we can properly redact portions of the annual inspection reports and release them to you" and it could prioritize Hills Creek and Lookout Point dams' Annual Inspection Reports first. A true and accurate copy of this email is attached hereto as Attachment 4 at 1-2.

77.    On September 20, 2020, Willamette Riverkeeper responded via email that "any exemptions the Corps claims apply must be specifically identified and justified." Willamette Riverkeeper further noted that the Corps' September 3, 2020 proposal appeared to only relate to Annual Inspection Reports, and reminded the Corps that it is the agency's burden to demonstrate compliance with the FOIA, the Corps must identify and justify exemptions, and the rule of reasonable segregability applies to all records. A true and accurate copy of this email is attached hereto as Attachment 4 at 1.

78.    On October 22, 2020, Willamette Riverkeeper had not received a response to its September 20, 2020 email, and Willamette Riverkeeper emailed the Corps again, asking for an update and an estimated date of completion. A true and accurate copy of this email is attached hereto as Attachment 4 at 1.

79.    On December 1, 2020, Willamette Riverkeeper sent the Corps a Notice of Violation Letter and notified the Corps of Willamette Riverkeeper's intent to file a FOIA lawsuit within ten (10) working days for failure to produce a final determination, an estimated

date of completion, and other deadline related violations. A true and accurate copy of this email and letter is attached hereto as Attachment 5.

80. On December 2, 2020, the Corps responded that its "lack of experience" meant it was "not the best for estimating FOIA timeframes." The Corps further stated it "hoped" to provide a partial release within 2 weeks, and estimated it would fully satisfy the request by March 2021 but "the latter estimate is not a particularly strong one." A true and accurate copy of this email is attached hereto as Attachment 6.

81. To-date, Defendant has not produced a single record responsive to Plaintiff's March 25, 2020 FOIA Request.

82. Defendant has not gathered and reviewed responsive documents.

83. Defendant has not determined and communicated the scope of documents they intend to produce and withhold, the claimed FOIA exemptions, and the reasons for withholding any documents.

84. Defendant has not informed Plaintiff that it can appeal whatever portion(s) of Defendant's determination is adverse.

85. Defendant's failures and unlawful actions have prejudiced Willamette Riverkeeper's ability to timely obtain public records.

86. If an agency fails to provide a final determination on a FOIA request within the statutory timeframe, the requester is deemed to have constructively exhausted its administrative remedies and may immediately file suit against the agency. 5 U.S.C. § 552(a)(6)(C)(i).

87. Willamette Riverkeeper has constructively exhausted all administrative remedies required by the FOIA.

88.  The Administrative Procedure Act (APA) provides for judicial relief of final agency action. 5 U.S.C. §§ 701, 706.

89.  Under the authority of the APA, a reviewing court must hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2).

90.  Willamette Riverkeeper has been required to expend costs and to devote organizational resources to this litigation and to obtain the services of legal counsel including attorneys, law clerks, and legal assistants to prosecute this action.

## LEGAL FRAMEWORK

### The Freedom of Information Act

91.  The FOIA requires U.S. government agencies to promptly make public records available to any person if that person makes a request which (1) reasonably describes the records sought and (2) complies with any applicable agency rules for making such a request. 5 U.S.C. § 552(a)(3)(A).

92.  The FOIA requires an agency to issue a final determination on any such information request within twenty working days from the date of its receipt. 5 U.S.C. § 552(a)(6)(A)(i). In issuing a final determination, an agency is required to inform the requester of three things: (1) the agency's determination of whether or not to comply with the request; (2) the reasons for its decision; and (3) notice of the right of the requester to appeal to the head of the agency. 5 U.S.C. § 552(a)(6)(A)(i).

93.  The FOIA requires an agency to notify the requester of its final determination "immediately." 5 U.S.C. § 552(a)(6)(A)(i).

94.    The FOIA allows an agency to extend the twenty-day determination deadline, however, by ten working days when "unusual circumstances" exist and when the agency so notifies a requester in writing. 5 U.S.C. § 552(a)(6)(B)(i)-(iii). A notice informing a requester of the invocation of the "unusual circumstances" provision must specify the applicable "unusual circumstances." 5 U.S.C. § 552(a)(6)(B)(i)-(iii).

95.    Permissible "unusual circumstances" are limited to (1) the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request; (2) the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request; or (3) the need for consultation, which shall be conducted with all practicable speed, with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein. 5 U.S.C. § 552(a)(6)(B)(iii).

96.    An agency is entitled to one ten-working day extension. 5 U.S.C. § 552(a)(6)(B)(i). The written notice provided to the requester must specify the specific unusual circumstances justifying the extension and the date on which a final determination is expected to be dispatched. Id.

97.    In some circumstances, the FOIA allows an agency to invoke an extension beyond ten days. To invoke a longer extension, the FOIA requires an agency to provide written notification to the requester that (1) offers the requester an opportunity to limit the scope of the request so that it may be processed within that time limit, or (2) offers the requester an opportunity to arrange with the agency an "alternative time frame" for processing the request. 5 U.S.C. § 552(a)(6)(B)(ii).

98.    As part of invoking an "alternative time frame" extension, the agency must also make available to the requester its FOIA Public Liaison, who is tasked to resolve any dispute between the requester and the agency. 5 U.S.C. § 552(a)(6)(B)(ii).

99.    Even when and "unusual circumstances" extension is made, the agency must still notify the requester of its expected date on which a final determination will be dispatched. 5 U.S.C. § 552(a)(6)(B)(i).

100.   The FOIA permits agencies to promulgate regulations "providing for multitrack processing of requests for records based on the amount of work or time (or both) involved in processing requests." 5 U.S.C. § 552(a)(6)(D)(i). Agency regulations "may provide a person making a request that does not qualify for the fastest multitrack processing an opportunity to limit the scope of the request in order to qualify for faster processing." 5 U.S.C. § 552(a)(6)(D)(ii).

101.   Multitrack processing "shall not be considered to affect" the due diligence requirements of an agency's duties to respond within the applicable time limits. 5 U.S.C. § 552(a)(6)(D)(iii).

102.   If an agency fails to provide a final determination on a FOIA request within the statutory timeframe, the requester is deemed to have exhausted its administrative remedies and may immediately file suit against the agency. 5 U.S.C. § 552(a)(6)(C)(i).

103.   The FOIA also requires agencies provide "an estimated date on which the agency will complete action on the request." 5 U.S.C. § 552(a)(7)(B)(ii); *see also* 5 U.S.C. § 552(a)(6)(B)(i).

104.   Agencies shall make reasonable efforts to maintain their records so they are reproducible for FOIA purposes, and "shall make reasonable search efforts" for responsive records. 5

U.S.C. § 552(a)(3)(B), (C). The term "search" "means to review, manually or by automated means, agency records for the purpose of locating those records which are responsive to a request." 5 U.S.C. § 552(a)(3)(D).

105.    In furnishing records responsive to a request under the FOIA, an agency may, for a limited set of categories of information, exclude or withhold such information from disclosure. 5 U.S.C. § 552(b). However, even where proper justification exists for withholding such information, the agency must provide the remaining portions of records that are reasonably segregable from the properly withheld portions thereof. Id.

106.    Except in certain circumstances, when an agency produces a record in response to a FOIA request but withholds a portion thereof, the agency must indicate the volume of information withheld and the exemption under which such information has been withheld. Id.; 5 U.S.C. § 552(a)(6)(F).

107.    Documents shall be furnished without any charge or at a reduced charge if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester. 5 U.S.C. § 552(a)(4)(A)(iii).

108.    An agency that withholds public records from a requestor under the FOIA bears the burden of sustaining the legality of its action. 5 U.S.C. § 552(a)(4)(B).

## FIRST CLAIM FOR RELIEF

## VIOLATION OF THE FREEDOM OF INFORMATION ACT

## FAILURE TO MAKE A DETERMINATION AND CONSTRUCTIVE DENIAL OF WILLAMETTE RIVERKEEPER'S FOIA REQUEST

109.    Plaintiff incorporates by reference all preceding paragraphs.

110.   FOIA requires that an agency of the federal government, "upon any request … shall make the records promptly available." 5 U.S.C. § 552(a)(3)(A). Each agency, upon any request for records, "shall determine within 20 [working days] after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor." 5 U.S.C. § 552(a)(6)(A)(i).

111.   To "make a 'determination' the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *See, e.g., Citizens for Responsibility & Ethics in Washington v. Federal Election Commission*, 711 F.3d 180, 189 (D.C. Cir. 2012).

112.   A requester is "deemed to have exhausted his administrative remedies with respect to such a request if the agency fails to comply with the applicable time limit provisions." 5 U.S.C. § 552(a)(6)(C)(i). Requesters may seek immediate judicial review if the agency fails to make an initial substantive determination on a request within 20 working days.

113.   Defendant has failed to respond to Willamette Riverkeeper's FOIA request within the statutorily prescribed 20 working-day time period. 5 U.S.C. § 552(a)(6)(A)(i).

114.   Plaintiff has a statutory right to have Defendant process its FOIA request in a manner that complies with FOIA.

115.   There is no reasonable basis for Defendant's failure to issue a timely and proper determination, to properly invoke the unusual circumstances exception, and to fully release all responsive, non-exempt records.

116. FOIA establishes that an agency's failure to comply with the Act's deadlines shall constitute a constructive denial of the request and that the requester's administrative remedies shall be deemed exhausted. 5 U.S.C. § 552(a)(6)(C)(i).

117. Defendant has violated Plaintiff's rights pursuant to FOIA by unlawfully failing to make a determination on whether to comply with Plaintiff's FOIA request, improperly invoking the "unusual circumstances" exception, failing respond to Plaintiff's FOIA request, or by providing documents and information responsive to Plaintiff's FOIA request.

118. Pursuant to 5 U.S.C. § 552(a)(6)(C)(i), "Upon any determination by an agency to comply with a request for records, the records shall be made promptly available to such person making such request."

119. No records have been made available to Plaintiff.

120. Plaintiff's organizational activities are and will continue to be adversely affected if Defendant is allowed to continue to violate FOIA's disclosure provisions, as it has in this case. Plaintiff's members are and will continue to be adversely affected if Defendant is allowed to continue violating FOIA's disclosure provisions, as it has in this case.

121. Unless enjoined and made subject to a declaration of Plaintiff's legal rights by this Court, Defendant will continue to violate Plaintiff's rights to receive public records pursuant to FOIA.

122. Plaintiff has fully constructively exhausted all administrative remedies required by FOIA. 5 U.S.C. §§ 552(a)(6)(A), (a)(6)(C).

123. Plaintiff is entitled to injunctive relief to compel Defendant to provide, and comply with, a final determination.

124.    Based on the nature of Plaintiff's activities, Plaintiff will continue to employ FOIA's statutory provisions in information requests to Defendant in the foreseeable future. These activities will be adversely affected if Defendant is allowed to continue to illegally fail to provide a determination as to Plaintiff's request.

125.    Unless enjoined and made subject to a declaration of Plaintiff's legal rights by this Court, Defendant will continue to violate Plaintiff's rights to receive public records under the FOIA.

126.    Plaintiff is entitled to reasonable costs of litigation, including attorney's fees, costs, and other expenses pursuant to FOIA. 5 U.S.C. § 552(a)(4)(E).

127.    Defendant's actions as described above are arbitrary, capricious, not in accordance with law, and without observance of procedures required by law, within the meaning of the APA, 5 U.S.C. § 706.

128.    Plaintiff is entitled to its reasonable fees, costs, and expenses associated with this litigation pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

## SECOND CLAIM FOR RELIEF

## VIOLATION OF THE FREEDOM OF INFORMATION ACT

## FAILURE TO COMPLY WITH, AND TO PROVIDE,
## AN ESTIMATED COMPLETION DATE

129.    Plaintiff incorporates by reference the preceding paragraphs.

130.    Plaintiff has a statutory right to have Defendant process its FOIA requests in a manner that complies with the FOIA. Defendant violated Plaintiff's rights by failing to comply with its own estimated date of completion. 5 U.S.C. § 552(a)(7)(B)(ii), *see also* 5 U.S.C. § 552(a)(6)(B)(i).

131.    Plaintiff made multiple inquiries for Defendant to provide an estimated completion date. On December 1, 2020, Plaintiff sent Defendant a letter via email, notifying Defendants of FOIA violations. By email dated December 2, 2020, Defendant responded that the agency was "not the best for estimating FOIA timeframes" and it estimated "we can fully satisfy this request by March of next year" but qualified its estimation as "not a particularly strong one." Attachment 6.

132.    Defendant's failure to comply with or provide an estimated date of completion on Plaintiff's FOIA request is unlawful under the FOIA and has prejudiced Plaintiff's ability to timely obtain public records.

133.    Plaintiff has constructively exhausted its administrative remedies with respect to this claim. Plaintiff is entitled to injunctive relief to compel Defendant to provide, and comply with, an estimated date of completion.

134.    Based on the nature of Plaintiff's organizational activities, Plaintiff will continue to employ FOIA's statutory provisions in information requests to Defendant in the foreseeable future. These activities will be adversely affected if Defendant is allowed to continue to fail to adhere to its own estimated date of completion, and to fail to provide renewed estimated dates of completion.

135.    Unless enjoined and made subject to a declaration of Plaintiff's legal rights by this Court, Defendant will continue to violate the Plaintiff's rights to receive public records under the FOIA.

**THIRD CLAIM FOR RELIEF**
**(in the Alternative to Counts I through II)**

**VIOLATION OF THE FREEDOM OF INFORMATION ACT**

**FAILURE TO PROVIDE NON-EXEMPT PUBLIC RECORDS**

COMPLAINT                                    25

136.    Plaintiff incorporates by reference the preceding paragraphs.

137.    Willamette Riverkeeper has a statutory right to have Defendant process its FOIA request in a manner that complies with the FOIA.

138.    Willamette Riverkeeper's rights in this regard were violated when Defendant failed to promptly provide public, non-exempt records to Willamette Riverkeeper, 5 U.S.C. § 552(a)(3)(A), § 552(b), and to provide a reasonable estimate of the volume of withheld records. 5 U.S.C. § 552(a)(6)(F).

139.    For Willamette Riverkeeper's FOIA request, Defendant has failed to release any responsive, non-exempt records in violation of 5 U.S.C. § 552(a)(3).

140.    Defendant is unlawfully withholding public disclosure of information sought by Willamette Riverkeeper, information to which it is entitled and for which no valid disclosure exemption applies.

141.    Defendant has failed to produce any responsive records for the thirteen Willamette Valley Project dams which are subject to Willamette Riverkeeper's FOIA request in violation of 5 U.S.C. § 552(a)(3).

142.    Defendant has failed to produce any responsive records for the ten prioritized categories of records, as specified by Willamette Riverkeeper on April 21, 2020, in violation of 5 U.S.C. § 552(a)(3).

143.    Defendant has failed to make a reasonable effort to estimate the volume of requested, non-exempt records, for all categories of records which Willamette Riverkeeper has been denied access.

144.    Willamette Riverkeeper has constructively exhausted its administrative remedies with respect to this claim.

145. Willamette Riverkeeper is entitled to injunctive relief to compel production of all non-exempt, responsive records.

146. Based on the nature of Willamette Riverkeeper's organizational activities, it will undoubtedly continue to employ FOIA's provisions in information requests to Defendant in the foreseeable future.

147. Willamette Riverkeeper's organizational activities will be adversely affected if Defendant is allowed to continue violating FOIA's response deadlines as it has in this case.

148. Unless enjoined and made subject to a declaration of Willamette Riverkeeper's legal rights by this Court, Defendant will continue to violate the rights of Willamette Riverkeeper to receive public records under the FOIA.

### FOURTH CLAIM FOR RELIEF
### (in the Alternative to Counts I through III)

### VIOLATION OF THE FREEDOM OF INFORMATION ACT

### UNLAWFUL WITHHOLDING OF RESPONSIVE RECORDS
### AND FAILURE TO PROVIDE REASONABLY SEGREGABLE
### PORTIONS OF RECORDS THAT ARE NOT EXEMPT

149. Plaintiff incorporates by reference the preceding paragraphs.

150. Willamette Riverkeeper has a statutory right to have Defendant process its FOIA request in a manner that complies with FOIA.

151. Willamette Riverkeeper's rights in this regard were violated when Defendant unlawfully withheld and redacted information for which no lawful disclosure exemption applies. 5 U.S.C. § 552(a)(3); 5 U.S.C. § 552(b).

152. Defendant also failed to reasonably segregate exempt and non-exempt records.

153. Under FOIA, Defendant bears a heavy burden to establish the claimed exemption applies to the records that it continues to withhold. 5 U.S.C. § 552(a)(4)(B) ("[T]he burden is on

the agency to sustain its action."). In the present case, Defendant has identified which FOIA exemptions may apply and Defendant has not met the burden necessary to justify its withholding of records under any FOIA exemptions claimed, nor has it reasonably or with specific detail explained how the information withheld logically falls within the claimed exemption.

154.   In the event the FOIA exemptions claimed reasonably apply to any of the records Defendants are currently withholding, Defendant must provide Willamette Riverkeeper with any releasable and reasonably segregable non-exempt portions of those records. 5 U.S.C. § 552(b).

155.   Willamette Riverkeeper has constructively exhausted its administrative remedies with respect to this claim.

156.   Willamette Riverkeeper is entitled to injunctive relief to compel production of all non-exempt, responsive records.

157.   Based on the nature of Willamette Riverkeeper's organizational activities, it will undoubtedly continue to employ FOIA's provisions in information requests to Defendants in the foreseeable future.

158.   Willamette Riverkeeper's organizational activities will be adversely affected if Defendant is allowed to continue violating the statutory duties under the FOIA as it has in this case.

159.   Unless enjoined and made subject to a declaration of Willamette Riverkeeper's legal rights by this Court, Defendant will continue to violate the rights of Willamette Riverkeeper to receive public records under the FOIA.

**FIFTH CLAIM FOR RELIEF**
**(in the Alternative to Counts I through IV)**

**VIOLATIONS OF THE ADMINISTRATIVE PROCEDURE ACT**

160.    Plaintiff incorporates by reference the preceding paragraphs.

161.    Defendant has failed to act in an official capacity under color of legal authority by violating the requirements of the FOIA. In particular, Defendant is: failing to provide a timely final determination; failing to properly invoke the "unusual circumstances" exception; and failing to comply with, and provide, an estimated completion date. As a result, Defendant continues to unlawfully withhold documents from public disclosure and/or unlawfully delay the disclosure thereof.

162.    Defendant has unlawfully withheld and/or delayed agency action by failing to comply with the mandates of FOIA consequent to their following actions and omissions: failing to provide a timely final determination; failing to properly invoke the "unusual circumstances" exception; and failing to comply with, and provide, an estimated completion date.

163.    Plaintiff has been adversely affected and aggrieved by Defendant's failure to comply with the mandates of FOIA. Defendant's failure and refusal to issue a timely final determination on the information requested has injured Plaintiff's interests in public oversight of governmental operations and constitute a violation of Defendant's APA statutory duties.

164.    Plaintiff has suffered a legal wrong as a result of Defendant's failure to comply with the mandates of FOIA. Defendant's failure and refusal to issue a timely final determination on Plaintiff's information request and to provide an estimated completion date have injured Plaintiff's interests in public oversight of governmental operations and constitute a violation of Defendant's statutory and regulatory duties under the FOIA and the APA.

165.    Defendant's failures and refusal to provide a timely final determination; to properly invoke the "unusual circumstances" exception; and to comply with, and provide, an estimated completion date constitutes agency action unlawfully withheld or unreasonably delayed and is therefore actionable pursuant to the APA. 5 U.S.C. § 706(1).

166.    Alternatively, Defendant's failures and refusal to provide a timely final determination; and to comply with, and provide, a renewed estimated completion date are each arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law and are therefore actionable pursuant to the APA. 5 U.S.C. § 706(2).

167.    Plaintiff is entitled to judicial review under the APA. 5 U.S.C. §§ 702, 706.

168.    Plaintiff is entitled to costs of disbursements and costs of litigation, including reasonable attorney and expert witness fees, under the Equal Access to Justice Act, 28 U.S.C. § 2412.

## PLAINTIFF'S PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in favor of Plaintiff and issue the following relief:

169.    Order Defendant to promptly provide Plaintiff all of the information sought in this action and to immediately disclose the requested records in unredacted format unless an exemption is properly claimed and properly applies; and if so applied, to produce reasonably segregable, non-exempt portions of the responsive records.

170.    Declare Defendant's failure to make a timely and adequate determination as unlawful under the FOIA, 5 U.S.C. § 552(a)(6)(A)(i), as well as agency action unlawfully withheld and unreasonably delayed, 5 U.S.C. § 706(1), and/or arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, 5 U.S.C. § 706(2).

COMPLAINT                                    30

171. Declare Defendant's failure to provide an estimated completion date to be unlawful under the FOIA, 5 U.S.C. §§ 552(a)(3)(A), (a)(6)(C)(i), as well as agency action unlawfully withheld and unreasonably delayed, 5 U.S.C. § 706(1), and/or arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, 5 U.S.C. § 706(2).

172. Declare Defendant's failure to provide Plaintiff with non-exempt records as unlawful under the FOIA, as well as agency action unlawfully withheld and unreasonably delayed, 5 U.S.C. § 706(1), and/or arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, 5 U.S.C. § 706(2).

173. Declare Defendant's unlawful withholding of responsive records from Plaintiff to be unlawful under the FOIA, as well as agency action unlawfully withheld and unreasonably delayed, 5 U.S.C. § 706(1), and/or arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, 5 U.S.C. § 706(2).

174. Declare Defendant's failure to disclose the reasonably segregable information in records requested by Plaintiff to be unlawful under the FOIA, as well as agency action unlawfully withheld and unreasonably delayed, 5 U.S.C. § 706(1), and/or arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, 5 U.S.C. § 706(2).

175. Issue an injunction requiring the Defendant to make a determination on whether to comply with Plaintiff's FOIA requests and provide Plaintiff with all responsive records sought through its FOIA request, 5 U.S.C. § 552(a)(4)(B);

176. Retain jurisdiction over this action to ensure the timely processing of Plaintiff's FOIA request, that Defendant conducts a search reasonably calculated to locate all records responsive to Plaintiff's FOIA request with the cut-off date for such search being the date the search is conducted, and that no responsive agency records are wrongfully withheld;

177. Award Plaintiff its costs, expenses, and reasonable attorneys' fees associated with this litigation pursuant to 5 U.S.C. § 552(a)(4)(E) and 28 U.S.C. § 2412; and

178. Grant Plaintiff such additional and further relief as the Court deems just and appropriate.

Respectfully submitted this 16th day of December, 2020.

*s/ Elisabeth A. Holmes*
Elisabeth A. Holmes (OSB # 120254)
Willamette Riverkeeper
P.O. Box 293
Eugene, Oregon 97440
Tel. (541) 870-7722 (No facsimile)
Email: eli@willametteriverkeeper.org

*s/ Daniel C. Snyder*
Daniel C. Snyder (OSB # 105127)
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence Street
Eugene, Oregon 97401
Tel. (541) 344-3505
Fax (541) 344-3516
Email: dan@tebbuttlaw.com

Attorneys for Plaintiff

Willamette Riverkeeper, Plaintiff

v.

United States Army Corps of Engineers, Defendant

District of Oregon (Eugene)

6:20-cv-2189-__

Complaint (filed December 16, 2020)
Index of Attachments

| Attachment | Description |
|---|---|
| 1 | Willamette Riverkeeper's March 25, 2020 Freedom of Information Act (FOIA) Request to the U.S. Army Corps of Engineers |
| 2 | U.S. Army Corps of Engineers' Environmental Assessment Draft Willamette Basin Dams Reservoir Restrictions – Lookout Point and Hills Creek Dams Lane County, Oregon (dated January 2020, released to the public February 21, 2020) |
| 3 | April 8, 2020 Email from the Corps acknowledging receipt of FOIA request |
| 4 | Chain of email exchanges between Willamette Riverkeeper and the Corps between April 21, 2020 and October 22, 2020. Specifically, emails dated: <br> - April 21, 2020 <br> - May 19, 2020 <br> - June 11, 2020 <br> - July 28, 2020 <br> - August 19, 2020 <br> - September 3, 2020 <br> - September 20, 2020 <br> - October 22, 2020 <br> - |
| 5 | December 1, 2020 Email from Willamette Riverkeeper to the Corps with a Notice of Violation letter |
| 6 | December 2, 2020 Response from the Corps to Willamette Riverkeeper |
| 7 | Civil Action Cover Sheet |